Michelle R. Matheson #019568
Emily D. Armstrong, Of Counsel, #030082
**MATHESON & MATHESON, P.L.C.**
15300 North 90th Street
Suite 550
Scottsdale, Arizona 85260
(480) 889-8951
mmatheson@mathesonlegal.com
earmstrong@mathesonlegal.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vera A. Meier-Bennett, M.D., | Case No.: |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| Summit Healthcare Association, | (Jury Trial Demanded) |
| Defendant. | |

Plaintiff Vera A. Meier-Bennett, MD ("Plaintiff" or "Dr. Bennett"), by and through her undersigned counsel, for her Complaint against Defendant Summit Healthcare Association ("Defendant" or "Summit") states and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff is an individual residing in Navajo County, Arizona.

2.      Defendant employed Plaintiff as a doctor providing pediatric services.

3.      Defendant is an Arizona non-profit corporation located and doing regular business in Navajo County, Arizona.

4.      Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101e, *et seq.*

5.     Plaintiff was a qualified individual with a disability, as defined under the ADA, at the time of the below-described events.

6.     Defendant caused the events and actions complained of herein to occur in Navajo County, Arizona.

7.     At all times relevant herein, Defendant had 15 or more employees.

8.     Defendant is an employer within the meaning of the ADA and Title VII.

9.     This Court has jurisdiction over this matter and venue is proper before this Court pursuant to A.R.S. §12-401.

**EXHAUSTION OF REMEDIES**

10.    Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in Phoenix, Arizona; Charge No. 540-2015-00401 within 300 days of the adverse job actions complained of.

11.    Plaintiff complained that Defendant discriminated against her based on her disability and religion and that she was being retaliated against for engaging in protected conduct.

12.    On August 1, 2018, the EEOC issued a Right to Sue notice to Plaintiff informing Plaintiff of her right to initiate a lawsuit against Defendant.

13.    This suit is timely filed within 90 days after Plaintiff's receipt of the Right to Sue notice.

**FACTS COMMON TO ALL COUNTS**

14.    Plaintiff is a Board Certified Pediatrician, with over 20 years of experience.

15.    In 2011, Dr. Bennett relocated from New Jersey to the White Mountains in Arizona to continue her practice.

16.    Effective March 22, 2011, Defendant employed Dr. Bennett as a physician to provide services to its pediatric patients.

17.    Defendant is located in Show Low, Arizona, where the population and patient-base is primarily Mormon.

18.     Many of Defendant's employees are also followers of the Mormon religion.

19.     Plaintiff is not Mormon.

20.     From 2011 until August of 2014, Plaintiff successfully served Defendant's patients and performed her employment duties.  This is confirmed by her spotless employment record, and the absence of any negative employment review or employee discipline.

21.     Plaintiff suffers from the disease of alcoholism.

22.     Upon information and belief, Defendant was well aware of Plaintiff's disease as of August of 2014.

23.     Nevertheless, Plaintiff could at all times perform the essential functions of her job with an appropriate accommodation: inpatient rehab.

24.     Accordingly, Plaintiff is a qualified individual with a disability under the ADA.

25.     In August of 2014, Plaintiff informed Defendant that she needed to take some time off to attend an inpatient rehabilitation to treat her alcoholism.

26.     This amounted to a request for an accommodation under the ADA and constitutes protected conduct under the ADA.

27.     Plaintiff's request made it abundantly clear to Defendant that Plaintiff was a qualified individual under the ADA.

28.     Defendant granted Plaintiff's request for an accommodation, and she entered an inpatient treatment facility in California.

29.     This accommodation was not an undue burden to Defendant.

30.     Approximately one week into Plaintiff's rehabilitation, she contacted Defendant's Representative, Ken Allen, to inquire about her job security because she was considering purchasing property in the Show Low area where she worked.

31.     Mr. Allen initially informed Plaintiff that her job was secure, and that Defendant was anxious for Plaintiff to return to work.

32.   Approximately three weeks into Plaintiff's rehabilitation, Defendant's position changed and it began its effort to discriminate and retaliate against Plaintiff.

33.   Mr. Allen contacted Plaintiff's rehabilitation doctor and informed him that Defendant planned to terminate Plaintiff upon her return from rehab.

34.   Mr. Allen's stated reason for Plaintiff's termination was that the White Mountains community was a religious, i.e. Mormon, community, and that Defendant would not "put up" with an alcoholic pediatrician.

35.   Plaintiff's doctor relayed this conversation to Plaintiff, which caused Plaintiff great emotional distress.  As a result, she extended her inpatient stay by a month.

36.   During this time Dr. Bennett also heard from her colleagues at Summit that she was going to be terminated because of her disability, alcoholism, and because her medical condition was inconsistent with the Show Low community's and/or Summit's religious beliefs relating to alcohol consumption.

37.   Defendant then began retaliating and discriminating against Plaintiff by citing new, alleged reasons for criticizing Plaintiff's employment.

38.   Defendant, for the first time, claimed that Plaintiff was too "abrasive" or "pushy" with the male doctors.  In this regard, Plaintiff later discovered that Defendant was holding Plaintiff to a different standard than her similarly situated male and non-Mormon counterparts because she was a female, non-Mormon.

39.   Summit Representative, Dr. DeWitt later confirmed this to Plaintiff, and informed Plaintiff that she was in "another culture;" i.e. Mormon, with its corresponding views on the status of women.  Dr. DeWitt gave Plaintiff an example that if she had been living in Japan, she would have been expected to comply with Japanese cultural expectations.

40.   Plaintiff interpreted his comments to mean that Plaintiff needed to act more like a Mormon, female.

41.   Title VII and the ADA however guard against this type of conduct if it amounts to discrimination and retaliation like it does here.

42.     Defendant also singled out Plaintiff for an audit of her charts, and found Plaintiff overbilled approximately $70,000 worth of services for heightened CPT codes. Even though Defendant's employees, and not Plaintiff, were in charge of the billing, Defendant sought to recoup the alleged overpayment from Plaintiff.

43.     Defendant did not subject its similarly situated male, Mormon, and non-disabled physicians to an audit or this scrutiny.

44.     These employment concerns were pretext.

45.     On October 14, 2018, Dr. Bennett informed Summit that she was scheduled and ready to return to work on November 3, but that she was afraid that Summit intended to retaliate against her because of her disability, religion, or gender.

46.     Plaintiff's complaints constitute protected conduct under Title VII.

47.     Plaintiff's EEOC Charge also constitutes protected conduct.

48.     Plaintiff's fears were confirmed.

49.     On November 4, 2018, Defendant terminated Plaintiff.

50.     Plaintiff suffered damages as a result in the form of lost wages, benefits, privileges, malpractice insurance, and her bonus.

51.     Plaintiff also suffers from Post-Traumatic Stress Syndrome due to the events described herein.

52.     Following Plaintiff's termination, Defendant has hired two male, Mormon pediatricians to replace Plaintiff.  Defendant has also hired a new male Obstetrician.

**COUNT I (Disability Discrimination – ADA)**

53.     Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

54.     In 2014 at the time of the above-described events, Plaintiff was a qualified individual with a disability, alcoholism, as defined by the ADA, 42 U.S.C. § 12102(1).

55.     Despite her disability, Plaintiff performed and could perform all of her job duties in a satisfactory manner with an accommodation.

56.     Plaintiff requested a short-term accommodation: a leave of absence to attend alcohol rehabilitation.

57.     Defendant granted Plaintiff's accommodation.

58.     Plaintiff's rehabilitation produced the desired effect in that she is now completely sober and her alcoholism has no effect on her ability to perform her job.

59.     However, following Plaintiff's request for an accommodation and disclosure to Defendant of her disability, Defendant discriminated against Plaintiff.

60.     Defendant subjected Plaintiff to different standards of employment, targeted Plaintiff for an audit, and ultimately terminated Plaintiff because of her disability.

61.     Defendant's agents' comments that Defendant could not employ an alcoholic are direct evidence of the discrimination, and prove causation.

62.     As a result of Defendant's disability discrimination of Plaintiff, Plaintiff lost wages, benefits, privileges, malpractice insurance, and her bonus.

63.     Plaintiff also suffered compensatory damages under 42 U.S.C. § 12117(a).

64.     Following Plaintiff's termination, Defendant has hired two male, Mormon pediatricians to replace Plaintiff.  Defendant has also hired a new male Obstetrician.

## COUNT II (Retaliation – ADA)

65.     Plaintiff incorporates all of the foregoing paragraphs of this Complaint as if fully set forth herein.

66.     It is unlawful to retaliate against anyone for participating in ADA protected conduct and it is unlawful to interfere with any individual's enjoyment of his ADA rights on account of such individual having exercised his or her ADA rights.

67.     Plaintiff engaged in protected conduct when she requested an ADA accommodation, a leave of absence for inpatient rehabilitation, and generally sought to exercise her ADA rights.

68.     Defendant retaliated against Plaintiff for exercising her ADA rights and requesting/taking an accommodation, and interfered with Plaintiff's enjoyment of her

ADA rights, when subjected Plaintiff to different standards of employment, targeted Plaintiff for an audit, and ultimately terminated Plaintiff because of her disability.

69.    The timing between Plaintiff's protected conduct and her termination, in addition to the other described events, supports causation.

70.    As a result of Defendant's retaliation against Plaintiff, Plaintiff lost wages, benefits, privileges, malpractice insurance, and her bonus.

71.    Plaintiff also suffered compensatory damages under 42 U.S.C. § 12117(a).

### COUNT III (Retaliation – Title VII)

72.    Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

73.    Title VII makes it an unlawful employment practice for a person covered by the Act to discriminate against an individual "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

74.    Plaintiff engaged in or was engaging in an activity protected under this section when she complained to Summit that she thought she was the victim of gender and religious discrimination, and when she filed her EEOC charge complaining of same.

75.    As a result of these complaints of discrimination and filing the EEOC charge, and in retaliation for same, Defendant disciplined Plaintiff, worsened the terms and conditions of her employment, and ultimately terminated her.

76.    Defendant would not have taken these adverse employment actions against Plaintiff but for Plaintiff's protected and lawful conduct.

77.    As a result of Defendant's retaliation against Plaintiff, Plaintiff lost wages, benefits, privileges, malpractice insurance, and her bonus.

78.    Plaintiff also suffered compensatory damages as defined under Title VII.

**COUNT IV (Religious Discrimination – Title VII)**

79.     Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

80.     Defendant employed Plaintiff as a pediatric physician.

81.     At all times herein, Plaintiff satisfactorily performed and could perform her job duties.

82.     Many of Defendant's officers, agents and patients are Mormon and follow the Mormon religion.

83.     Plaintiff is not Mormon.

84.     Defendant discriminated against Plaintiff because she is not Mormon when it subjected her to different terms and conditions of her employment than her similarly situated Mormon counterparts, and ultimately terminated Plaintiff because of her religion.

85.     Following Plaintiff's termination, Defendant has hired two male, Mormon pediatricians to replace Plaintiff.  Defendant has also hired a new male Obstetrician.

86.     Defendant's agents' comments about Plaintiff needing to fit into the "culture," i.e. Mormon, and that they cannot "put up" with an alcoholic physician because of the Mormon beliefs on alcohol consumption, are direct and additional evidence of religious discrimination.

87.     As a result of Defendant's discrimination of Plaintiff, Plaintiff lost wages, benefits, privileges, malpractice insurance, and her bonus, and suffered "compensatory damages" as those are defined under Title VII.

WHEREFORE, for the foregoing reasons, Plaintiff prays for relief against Defendant as follows:

a.     For damages in the form of lost past and future wages, benefits, malpractice insurance, privileges, and her bonuses;

b.     For compensatory damages in the form of emotional distress damages and all other non-pecuniary relief available under the ADA and Title VII;

c.     For Plaintiff's costs and attorneys' fees;

d.     For pre- and post-judgment interest; and

e.     For such further relief as this Court deems just and proper.


DATED this 30th day of October 2018.

MATHESON & MATHESON, P.L.C.


By: /s/ Michelle R. Matheson
    Michelle R. Matheson, #019568
    Emily D. Armstrong, Of Counsel, #030082
    *Attorney for Plaintiff*